Merrimack,  
Oct. 3, 1905.

WENTWORTH v. PITTSFIELD.

Steps which furnish a means of descent from a sidewalk to the adjacent roadway and are not provided with a railing for the support of pedestrians do not constitute a " dangerous embankment and defective railing" within the meaning of section 1, chapter 59, Laws 1893.

CASE, for injuries from a defective highway. Trial by jury. A nonsuit was ordered at the close of the plaintiff's evidence, subject

to exception. Transferred by *Wallace*, C. J., from the October term, 1904, of the superior court.

The evidence tended to prove the following facts: There are two highways in the village of Pittsfield, one known as Main street, running nearly in an easterly and westerly direction, and the other, known as Chestnut street, running from Main street in a northerly direction, forming a right angle with it at the starting point. A portion of these highways, adjoining the lot in the easterly corner, is a sidewalk for the use of pedestrians. The surface of the sidewalk at the corner of the streets is twenty-three inches higher than the surface of the walk across Chestnut street. There are two stone steps leading from the surface of the sidewalk to that of the cross-walk, the upper one being five feet eleven inches long and twenty-five inches wide, and the lower one six feet eight inches long and fourteen and a half inches wide. There is an iron rail running from a point in the southerly line of the sidewalk on Main street, about six feet easterly of the steps, to a post set in the southerly end of the lower step. There is no rail at the other end of the steps. In the evening of January 6, 1903, the steps were covered with snow, and there was a hard, trodden path of snow and ice near their center line. The surface of the path on each step sloped upward from its front edge to the step above, and was slippery. About a quarter past seven o'clock that evening, when it was quite dark, the plaintiff walked on the sidewalk in Chestnut street in a southerly direction to the corner of Main street, and turned westerly into the path down the steps. As she stepped upon the lower step she slipped upon its hard, slanting, and slippery surface, fell, slid down the steps to the cross-walk, and was injured. She did not go off the northerly end of the steps. She did not take hold of the rail at the south end; there were persons standing against it near the top of the steps.

*Martin & Howe*, for the plaintiff.

*Edward A. Lane* and *Streeter & Hollis*, for the defendants.

CHASE, J. The question before the court is, whether the steps where the plaintiff was injured were a "dangerous embankment and defective railing" within the meaning of section 1, chapter 59, Laws 1893, as interpreted in *Wilder* v. *Concord*, 72 N. H. 259, and subsequent cases; that is to say, a dangerous embankment defectively railed. The defect which the plaintiff relies upon is the absence of a rail at the northerly end of the steps. It is not necessary to consider whether the absence of a rail would render

the town liable if a traveler went off or fell off the end of the steps because of such absence, for the plaintiff's injury was not caused in that way. Her position is that the statute referred to required the town to maintain a rail to serve as a support for travelers and prevent them from falling while using the steps, if a rail was reasonably necessary for such purpose to render the highway suitable for the travel over it. She complains of the absence of a hand-rail—not of the absence of a barrier to guard a traveler from the danger of falling from an embankment located contiguous to or near the traveled path in the highway.

The office of the rail required by the law, as it stood prior to the passage of the act of 1893, seems to have been to guard the traveler from going or falling over an embankment or precipice, or into a hole, or from going against an obstruction, located upon the side of the traveled path or very near to it. A town then might be, and still may be, fined for neglect to cause a dangerous embankment or causeway in a highway to be securely railed. P. S., c. 75, s. 1. Under the former statute rendering towns liable to travelers for injuries caused by defects in highways, it was held that the absence of a railing would be a defect if the railing was reasonably necessary to prevent travelers from going into a hole (*Willey* v. *Portsmouth*, 35 N. H. 303), or a cellar (*Stack* v. *Portsmouth*, 52 N. H. 221), or a stairway leading to a cellar (*Sweeney* v. *Newport*, 65 N. H. 86), or against rocks, etc. (*Davis* v. *Hill*, 41 N. H. 329), located dangerously near the traveled path. See, also, *Knowlton* v. *Pittsfield*, 62 N. H. 535, and authorities cited. No case was cited by counsel, and none has been found in this state or elsewhere, in which it was held that the absence of a mere hand-rail was a defect for which the town would be liable to a traveler injured in consequence of it. A hand-rail, from the nature of things, can be serviceable only to travelers on foot; and it is useful to them not simply because the way is upon an embankment, or leads over a hill or an uneven surface. In the cold seasons when there is ice upon the ground, sidewalks upon level ground, as well as upon hilly ground, can be made safer to travelers by providing hand-rails for them to lay hold of and guard themselves against slipping and falling. A law that would require hand-rails upon sidewalks when reasonably necessary to prevent travelers from falling would place a severe burden upon towns— one that legislators would naturally hesitate to impose. It is doubtful whether, under the former law of the state, the defendants would be liable to the plaintiff because of the absence of the rail, though they might be liable because of the slippery condition of the steps. Under the present law (Laws 1893, c. 59), they are not liable for the latter cause, and it is equally clear that they

are not liable because of the absence of the hand-rail. It was intended by this law to materially abridge the liability of towns to civil actions for injuries resulting from defects in highways. *Wilder* v. *Concord*, 72 N. H. 259, 260. Unless notice is given as provided in section 2 of the act, such actions can be maintained only in case the defect exists in certain specified parts of a highway, namely, "a bridge, culvert, or sluiceway, or dangerous embankments and defective railings." "Embankments" and "railings" are here associated together as they are in section 1, chapter 75, Public Statutes. The natural inference is that the railings referred to are such as are necessary to guard the traveler from going over the dangerous embankment—such as will be barriers against such disaster. If the idea of support or aid to the traveler in his act of traveling had been in mind, it is highly improbable that the association of railings with dangerous embankments would have been made; for, as has already been said, railings for that purpose are needed in many places where there is no dangerous embankment. If the sidewalk in Chestnut street, over which the plaintiff passed before reaching the steps, had been icy,— especially if the surface of the ice had been sloping or uneven,— she might have needed a hand-rail there to avoid a fall, as much as she did while descending the steps. The defect of which she complains was not a "defect, insufficiency, or want of repair" of a "dangerous embankment and defective railing," within the meaning of the statute, and consequently she has no right of action against the defendants, even if it wholly or partially caused her injury. If it was a defect in the highway, it, like that caused by the slippery condition of the steps, was excluded from those for which towns are liable, by the passage of the act of 1893 and the repeal of the prior statutes on the subject. The nonsuit was rightly ordered.

*Exception overruled.*

All concurred.